**ORIGINAL**

1

1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE DISTRICT OF HAWAII

3    UNITED STATES OF AMERICA,    )  CR. NO. 04-00279 DAE
                                   )
4              Plaintiff,          )  Honolulu, Hawaii
                                   )  Thursday, May 12, 2005
5         vs.                      )  FILED IN THE
                                   )  UNITED STATES DISTRICT COURT
6    ARNULFO BARAJAS OCAMPO (1),   )  DISTRICT OF HAWAII
                                   )
7              Defendant.          )  MAY 1 6 2006
                                   )
8    _____)  at 3 o'clock and 45 min __ M
                                       SUE BEITIA, CLERK
9         HEARING ON MOTION FOR WITHDRAWAL OF NOT GUILTY
           PLEA AND TO PLEAD ANEW BEFORE THE HONORABLE
10   LESLIE E. KOBAYASHI, UNITED STATES MAGISTRATE JUDGE

11

12   APPEARANCES:

13   For Plaintiff:      BEVERLY W. SAMESHIMA
                         Assistant U.S. Attorney
14                       Office of the U.S. Attorney
                         Prince Kuhio Federal Building
15                       300 Ala Moana Boulevard, Suite 6100
                         Honolulu, HI  96850
16

17   For Defendant:      DONNA M. GRAY
                         Deputy Federal Public Defender
18                       Office of the Federal Public Defender
                         300 Ala Moana Boulevard, Suite 7-104
19                       Honolulu, Hawaii  96850

20

     Interpreter:        PATRICIA HARPSTRITE
21

22   Transcription Service:  Larraine Sinclair
                             317 Olomana Street #C-1
23                           Kailua, Hawaii  96734

24

     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.

EXHIBIT A

2

```
 1              THE CLERK:  Criminal 04-00279 DAE, United States
 2   of America vs. Defendant (1) Arnulfo Barajas Ocampo, also
 3   known as Miguel, last name unknown, also known as Jose Luis
 4   Cervantes.  This case has been called for a hearing on a
 5   Motion for Withdrawal of Not Guilty Plea and to Plead Anew.
 6              MS. SAMESHIMA:  Good afternoon, Your Honor.
 7   Beverly Wee Sameshima on behalf of the United States.
 8              THE COURT:  Good afternoon, Ms. Sameshima.  Ms.
 9   Gray?
10              MS. GRAY:  Good afternoon, Your Honor.  Donna
11   Gray present with Mr. Barajas Ocampo and interpreting in the
12   Spanish language, Your Honor, Patricia Harpstrite.
13              THE COURT:  All right.  Good afternoon to you
14   both.  The record will reflect the presence of Mr. Barajas
15   Ocampo and his Court-appointed interpreter, Ms. Harpstrite.
16              Counsel, is it your understanding that your
17   client intends to plead guilty today to the two counts
18   against him in the Indictment and to plead guilty with no
19   plea agreement with the Government.
20              MS. GRAY:  Yes, Your Honor, it is.
21              THE COURT:  Mr. Barajas Ocampo, before I can
22   accept your guilty plea, I must know that you understand
23   what you are doing; that you are pleading guilty freely and
24   voluntarily.
25              In order to make this determination, I will need
```

3

1   to ask you questions, and if any time you do not hear or

2   understand the questions, please say so.

3              Do you understand this?

4              THE DEFENDANT (through Interpreter):  Yes.

5              THE COURT:  All right.  Mr. Nakamura, if you'd

6   administer the oath to the Defendant.

7              THE CLERK:  Please raise your right hand.

8              (DEFENDANT ARNULFO OCAMPO BARAJAS SWORN.)

9              THE COURT:  What is your full name?

10             THE DEFENDANT:  Arnulfo Ocampo Barajas.

11             THE COURT:  How old are you?

12             THE DEFENDANT:  Thirty.

13             THE COURT:  How far did you go in school?

14             THE DEFENDANT:  Through middle school.

15             THE COURT:  And have you taken any medication,

16   alcohol, or drugs of any kind today?

17             THE DEFENDANT:  No.

18             THE COURT:  Do you feel well and alert and able

19   to understand and make decisions today?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Have you been treated recently for

22   any type of mental illness of addiction to narcotic drugs of

23   any kind.

24             THE DEFENDANT:  No.

25             THE COURT:  All right.  Counsel, to the best of

4

1   your knowledge, is your client fully competent and capable

2   of entering a valid plea.

3          MS. GRAY:  Yes, I believe he is.

4          THE COURT:  If you consent to enter your guilty

5   plea before me today as a United States Magistrate Judge,

6   then Judge Ezra will impose sentence at a later hearing

7   date.

8          Do you understand this?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Do you wish to consent to enter your

11   plea before me today as a United States Magistrate Judge and

12   to give up your right to enter a plea before a United States

13   District Judge.

14          THE DEFENDANT:  Yes.

15          THE COURT:  All right.  And did you sign this

16   form, written consent form, after discussing it with your

17   lawyer.

18          THE DEFENDANT:  Yes.

19          THE COURT:  All right.  And Ms. Gray, did you

20   have an opportunity to go over the form with your client and

21   are you fully satisfied he understands it?

22          MS. GRAY:  Yes, Your Honor, I did go over the

23   form with him with the interpreter, and I believe he does

24   understand it.

25          THE COURT:  All right.  You've signed it also;

Case 1:04-cr-00279-JMS    Document 106    Filed 05/16/2006    Page 5 of 26

5

1    correct?

2              MS. GRAY:  I did.

3              THE COURT:  The Court finds the Defendant has

4    consented to enter his guilty plea before a United States

5    Magistrate Judge.

6              Have you received a copy of the Indictment that

7    are the written charges against you in this case.

8              THE DEFENDANT:  Yes.

9              THE COURT:  Have you discussed those charges and

10   all the facts surrounding those charges with your lawyer,

11   Ms. Gray?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Are you fully satisfied with the

14   legal representation you've received from Ms. Gray as your

15   lawyer.

16             THE DEFENDANT:  Yes.

17             THE COURT:  Ms. Gray, are you and your client in

18   agreement as to your client's decision to plead guilty

19   today?

20             MS. GRAY:  Yes, we are.

21             THE COURT:  In the Indictment, you have been

22   charged with conspiracy to distribute and possess with the

23   intent to distribute fifty grams or more of methamphetamine,

24   its salts, isomers and salts of its isomers.

25             Do you understand this charge.

6

1          THE DEFENDANT:  Yes.

2          THE COURT:  In that count, and pursuant to the

3  Title 21, United States Code, Section 841(b)(1)(A), this

4  charge carries with it a minimum term of ten years of

5  imprisonment and a maximum period of imprisonment of life.

6          Do you understand this.

7          THE DEFENDANT:  Yes.

8          THE COURT:  In order for you to be punished, the

9  Government has the burden of proving to a jury beyond

10  reasonable doubt that you conspired to distribute and to

11  possess with the intent to distribute fifty grams or more of

12  methamphetamine, its salts and salts of its isomers -- I

13  should say isomers and salts of its isomers.

14          Do you understand this.

15          THE DEFENDANT:  Yes.

16          THE COURT:  Do you give up or waive your right to

17  have a jury determine that you conspired to distribute and

18  to possess with the intent to distribute fifty grams or more

19  of methamphetamine, its salts, isomers and salts of its

20  isomers.

21          THE DEFENDANT:  Yes.

22          THE COURT:  All right.  Do you agree that you are

23  knowingly responsible for fifty grams or more of

24  methamphetamine, its salts, isomers and salts of its isomers

25  as charged in Count 1 of the Indictment.

Case 1:04-cr-00279-JMS    Document 106    Filed 05/16/2006    Page 7 of 26

7

1          THE DEFENDANT:  Yes.

2          THE COURT:  You have been charged in Count 2 of

3  the Indictment with possession with the intent to distribute

4  fifty grams or more of methamphetamine, its salts, isomers

5  and salts of its isomers.

6          Do you understand this charge?

7          THE DEFENDANT:  Um hm.  Yes.

8          THE COURT:  All right.  Pursuant to Title 21,

9  United States Code, Section 841(b)(1)(A), this charge

10  carries a minimum sentence of ten years and a maximum period

11  of imprisonment of life.

12          Do you understand this.

13          THE DEFENDANT:  Yes.

14          THE COURT:  In order for you to be so punished,

15  the Government has the burden of proving to a jury beyond a

16  reasonable doubt that you possessed with the intent to

17  distribute fifty grams or more of methamphetamine, its

18  salts, isomers and salts of its isomers.

19          Do you understand this.

20          THE DEFENDANT:  Yes.

21          THE COURT:  Do you give up or waive your right to

22  have a jury determine that you possessed with the intent to

23  distribute fifty grams or more of methamphetamine, its

24  salts, isomers and salts of its isomers.

25          THE DEFENDANT:  Yes.

8

1          THE COURT:  Do you agree that you are knowingly

2  responsible for fifty grams or more of methamphetamine, its

3  salts, isomers and salts of its isomers as charged in Count

4  2 of the Indictment.

5          THE DEFENDANT:  Yes.

6          THE COURT:  For each of the counts, that is for

7  each of Counts 1 and 2, the possible penalties that you

8  would face if you plead guilty is a minimum term of ten

9  years imprisonment and up to a maximum term of life in

10  prison; a minimum of five years term of supervised release

11  and a maximum of supervised release for life; a fine between

12  zero and four million dollars; a mandatory special

13  assessment of one hundred dollars for each count for a total

14  of two hundred dollars; and the loss of certain federal

15  benefits.

16          Do you understand that these are the possible

17  penalties that you would face if you plead guilty to Counts

18  1 and 2 of the Indictment.

19          THE DEFENDANT:  Yes.

20          THE COURT:  Are there any other penalties that

21  Mr. -- is it Ocampo Barajas would face if he pleads guilty,

22  Ms. Sameshima.

23          MS. SAMESHIMA:  I don't believe so, Your Honor.

24  He is an illegal alien, I believe.

25          THE COURT:  Right.

Case 1:04-cr-00279-JMS     Document 106     Filed 05/16/2006     Page 9 of 26

9

```
 1              MS. SAMESHIMA:  So the Court --
 2              THE COURT:  Right.  So I'll go over that part.
 3   Okay.
 4              If you are convicted of more than one offense,
 5   the Court has the authority to order consecutive sentences,
 6   and if the Court did so, you would have to serve those
 7   sentences one at a time.
 8              Do you understand this.
 9              THE DEFENDANT:  Yes.
10              THE COURT:  All right.  During a period of
11   supervised release, you must comply with a set of conditions
12   that will be explained to you by a probation officer.  These
13   conditions include that you obey the law; that you report to
14   the probation officer as required and other conditions.
15              If the Court finds that you've violated any of
16   those conditions during your period of supervised release,
17   you could be required to serve additional prison time.
18              Do you understand this.
19              THE DEFENDANT:  Yes.
20              THE COURT:  Are you presently on probation,
21   parole or supervised release from any other case.
22              THE DEFENDANT:  No.
23              THE COURT:  Does the United States contend that
24   any felony offense to which he is today pleading guilty
25   occurred while he was out on bond in relation to some other
```

Case 1:04-cr-00279-JMS     Document 106     Filed 05/16/2006     Page 10 of 26

10

1  federal criminal charge.

2              MS. SAMESHIMA:  No, Your Honor.

3              THE COURT:  As you are not an American citizen, a

4  conviction in this case may affect your right to stay in

5  this country.

6              Do you understand that.

7              THE DEFENDANT:  Yes.

8              THE COURT:  Do you understand that Judge Ezra may

9  be calculating your sentence based on guidelines issued by

10 the United States Sentencing Commission.

11             THE DEFENDANT:  Yes.

12             THE COURT:  Have you and your lawyer talked about

13 how these guidelines may apply to your case?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Do you understand that the Court will

16 not be able to determine the guideline sentence for your

17 case until after the presentence report has been prepared.

18             THE DEFENDANT:  Yes.

19             THE COURT:  The Court will also have to wait

20 until you and the Government have had an opportunity to read

21 the report and to comment on the contents of that report.

22             Do you understand this.

23             THE DEFENDANT:  Yes.

24             THE COURT:  Do you also understand that any

25 sentence imposed by the judge may be different from any

Case 1:04-cr-00279-JMS    Document 106    Filed 05/16/2006    Page 11 of 26

11

1   estimate given to you by your lawyer.

2              THE DEFENDANT:  Yes.

3              THE COURT:  Do you also understand that after

4   your guideline range has been determined, the Court has the

5   authority to depart from that guideline range and to impose

6   a sentence that might be more severe or less severe.

7              THE DEFENDANT:  Yes.

8              THE COURT:  Judge Ezra will also be determining

9   your sentence based on any admissions you make at today's

10  plea hearing.

11             Do you understand that?

12             THE DEFENDANT:  Yes.

13             THE COURT:  You do not have to admit to any facts

14  that are in dispute with the Government, but if you do make

15  admissions, Judge Ezra will rely on those admissions and

16  your admissions may result in your sentence being increased.

17             Do you understand this.

18             THE DEFENDANT:  Yes.

19             THE COURT:  If your sentence is more severe than

20  you expected, you will still be bound by your plea.  Even if

21  you do not like the sentence imposed by Judge Ezra, you will

22  not be able to take back your guilty plea.  So the time to

23  make that decision is now.

24             Do you understand this?

25             THE DEFENDANT:  Yes.

Case 1:04-cr-00279-JMS    Document 106    Filed 05/16/2006    Page 12 of 26

12

1          THE COURT:  All right.  Parole has been

2   abolished.  If you are sentenced to prison, you will not be

3   released on parole.

4          Do you understand this.

5          THE DEFENDANT:  Yes.

6          THE COURT:  You have certain rights that you'll

7   give up by pleading guilty, and I need to explain those

8   rights to you now.

9          You have the right to plead not guilty and to

10  persist in that plea.  You will then have the right to trial

11  by jury and at trial, you'd have the right to have an

12  attorney defend you.

13         You would have the right to see and hear all

14  witnesses and to have your attorney cross-examine them.

15         You would have the right to testify or remain

16  silent and not testify.

17         You would have the right to have the court issue

18  subpoenas for any witnesses you wish to call in your

19  defense.

20         At trial, you'd be presumed to be innocent and

21  the United States would have the burden of proving that you

22  are guilty beyond a reasonable doubt.

23         THE DEFENDANT:  Yes.

24         THE COURT:  Before you can be convicted, all

25  twelve jurors must be convinced that the United States met

Case 1:04-cr-00279-JMS   Document 106   Filed 05/16/2006   Page 13 of 26

13

1 that burden.

2          If you are found guilty after a trial, you'd have

3 the right to appeal that conviction to a higher court.  If

4 you could not afford to pay the cost of such an appeal, the

5 Government would pay those costs for you.

6          Do you understand you have all of these rights?

7          THE DEFENDANT:  Yes.

8          THE COURT:  If you plead guilty, however, and if

9 the Court accepts that plea, there will be no trial and you

10 will be waiving or giving up your rights.

11          Do you understand this.

12          THE DEFENDANT:  Yes.

13          THE COURT:  As long as you plead not guilty, you

14 have the right to remain silent.  But if you plead guilty, I

15 am going to ask you what it is that you did that makes you

16 guilty of the crimes you've been charged with, and you must

17 answer truthfully, under oath, even though your answers

18 establish you committed crimes.

19          Do you understand this.

20          THE DEFENDANT:  Yes.

21          THE COURT:  All right.  Ms. Sameshima, if you

22 would summarize the essential elements that the Government

23 would have to prove if this went to trial.

24          MS. SAMESHIMA:  Yes, Your Honor.

25          The essential element of Count 1, which is the

14

1  conspiracy to distribute and possess with intent to

2  distribute, is an agreement between the Defendant and his

3  co-conspirators to commit an illegal objective -- in this

4  case, the distribution and possession with intent to

5  distribute more than fifty grams or more of methamphetamine,

6  but the Defendant -- I'm sorry -- that the Defendant was a

7  member of the conspiracy knowing at least one of its

8  objectives and intending to achieve that objective.

9         And that in order for the Court to sentence the

10  Defendant to the minimum statutory mandatory sentence, the

11  Government would have to prove that the conspiracy involved

12  at least fifty grams of methamphetamine and that fifty grams

13  of methamphetamine was specifically attributable to this

14  defendant.

15         And with respect to Count 2, which is the

16  possession with intent to distribute fifty grams or more of

17  methamphetamine, the Government would have to prove that the

18  Defendant knowingly possessed methamphetamine and that he

19  possessed it with the intent to deliver it to another

20  person.

21         And again in order for the Court to sentence the

22  Defendant to the statutory minimum mandatory of ten years,

23  the Government would have to prove that the possession with

24  intent to distribute involved fifty grams or more of

25  methamphetamine.

Case 1:04-cr-00279-JMS    Document 106    Filed 05/16/2006    Page 15 of 26

15

1          THE COURT:  Ms. Gray, do you disagree in any

2   respect with that summary.

3          MS. GRAY:  No, Your Honor.  The elements are

4   correctly stated.

5          THE COURT:  Mr. Ocampo Barajas, do you understand

6   if there were trial on these charges, the Government would

7   have to bring evidence to prove each of those elements

8   beyond a reasonable doubt.

9          THE DEFENDANT:  Yes.

10          THE COURT:  All right.  Ms. Sameshima, please

11   summarize if this matter went to trial, what kind of

12   evidence as to the facts that the Government would offer at

13   the time of trial.

14          MS. SAMESHIMA:  Yes, Your Honor.  We would offer

15   the following facts if this case were to proceed to trial.

16   And that is that beginning some time in or around June or

17   July of 2004, the Defendant agreed with his co-defendants

18   Susan Darlene Makio and John Michael Waldroupe to distribute

19   and possess with intent to distribute quantities of

20   methamphetamine.

21          Mr. Waldroupe and Ms. Makio resided at various

22   hotels in Waikiki and agreed to provide the Defendant with a

23   place to stay within these hotels.  And at the same time,

24   the Defendant provided both Waldroupe and Makio with

25   quantities of methamphetamine which Waldroupe distributed to

Case 1:04-cr-00279-JMS    Document 106    Filed 05/16/2006    Page 16 of 26

16

1   others and also assisted the Defendant in distributing

2   quantities of methamphetamine.

3          We'd also offer the testimony of a DEA agent

4   acting in an undercover capacity who was introduced to Mr.

5   Ocampo by an informant and the Defendant agreed to provide

6   this undercover agent with a sample of ice.  Later that

7   evening -- this is on July 13th --

8          THE INTERPRETER:  Slow down just a little.

9          MS. SAMESHIMA:  On the evening of -- in the

10  evening of July 13th, 2004, Mr. Ocampo met with the

11  undercover DEA agent and provided him with a sample of ice

12  or methamphetamine.  The sample was submitted to the DEA

13  laboratory for analysis and it was determined to contain --

14  to be .083 grams of d-methamphetamine hydrochloride.

15         THE INTERPRETER:  Excuse me, may the Interpreter

16  request (inaudible) the amount that it was determined?

17         THE COURT:  Point zero --

18         MS. SAMESHIMA:  .083 grams.

19         The next day, July 14th, 2004, the Defendant

20  again met with the DEA agent, again who was acting in an

21  undercover capacity.  The Defendant inquired whether the

22  sample was acceptable and confirmed that he could provide

23  the agent with additional quantities of ice.

24         In fact, at that same meeting, the Defendant

25  distributed about two ounces of ice to the DEA agent in the

Case 1:04-cr-00279-JMS    Document 106    Filed 05/16/2006    Page 17 of 26

17

1    bathroom of the meeting place which was in fact a restaurant

2    in Waikiki.

3            The two ounces of suspected methamphetamine were

4    submitted to the DEA laboratory where they were analyzed and

5    determined to consist of 56.3 grams of d-methamphetamine

6    hydrochloride and it was determined that the purity of said

7    methamphetamine was 88 percent.

8            The next day, that being July 15th, 2004, a

9    search warrant was obtained and executed at room 2120 at the

10   Miramar Hotel, and as part of the investigation, it was

11   determined that that was where Mr. Ocampo had been staying

12   together with his co-defendants John Waldroupe and Darlene -

13   - Susan Darlene Makio.

14           As a result of the search warrant, the following

15   evidence was recovered:  eight clear plastic baggies

16   containing suspected methamphetamine in a black suitcase,

17   two clear plastic bags also containing suspected

18   methamphetamine in a night stand closet.  And the suspected

19   methamphetamine was sent to the DEA laboratory for analysis

20   and the forensic chemist who analyzed the substances

21   determined that they were a total of 217.3 grams of d-

22   methamphetamine hydrochloride, and that the purity of this

23   methamphetamine was 91 percent.

24           Defendant was arrested on this date, July --

25   believe July 15th.  He waived his rights and did make a

Case 1:04-cr-00279-JMS    Document 106    Filed 05/16/2006    Page 18 of 26

18

1   statement and we would offer that statement and he admitted

2   he'd been in Hawaii for about three weeks; he'd been staying

3   in various hotels and he admitted to delivering the sample

4   of ice to the under -- who he thought was someone purchasing

5   ice on July 13th, 2004; and he also admitted to delivering

6   the two ounces of ice the next day on July 14th to the same

7   individual.

8          If we proceeded to trial, we'd offer, we'd also

9   offer the statements of the two co-defendants basically

10  stating that they had met Mr. Ocampo; that he had been

11  staying with them in various hotels in Waikiki for the past

12  several weeks; and that he had assisted them in their rent

13  payments and in return had provided them with quantities of

14  ice.

15         And they would also say that the black suitcase

16  which contained the bulk of the methamphetamine that was

17  found during the execution of the search warrant was a

18  suitcase that belonged to Mr. Ocampo.

19         That would be some of the evidence we'd offer at

20  trial, Your Honor.

21         THE COURT:  All right.  Mr. Ocampo Barajas, tell

22  me in your own words what it is that you did that makes you

23  guilty of Count 1, which charges you with knowingly and

24  intentionally conspiring to distribute and possess with the

25  intent to distribute fifty grams or more of methamphetamine.

Case 1:04-cr-00279-JMS     Document 106     Filed 05/16/2006     Page 19 of 26

19

1          What did you do?

2          THE DEFENDANT:  Well, I don't have much knowledge

3     because of my addiction to alcohol and cocaine, and without

4     my really realizing it, they used my knowledge to distribute

5     or to plan to distribute.

6          THE COURT:  Okay.  The period of time that we're

7     talking about, would this be July of 2004?

8          THE DEFENDANT:  Um hm.

9          THE COURT:  Is that is your answer; yes?

10          THE DEFENDANT:  Yes.

11          THE COURT:  All right.  And during July of 2004,

12     were you staying in the Miramar Hotel at certain times and

13     the Ocean Resort Hotel at certain times?

14          THE DEFENDANT:  Yes.

15          THE COURT:  And were you staying with two people

16     who were known as Susan Darlene Makio and John Michael

17     Waldroupe.

18          THE DEFENDANT:  Yes.

19          THE COURT:  All right.  And in July of 2004, did

20     Mr. Waldroupe and Ms. Makio provide a sample of

21     methamphetamine to you to sell to other people.

22          THE DEFENDANT:  Yes.

23          THE COURT:  All right.  And on or about July 14,

24     2004, did you meet with someone in a restaurant and provide

25     that person with approximately two ounces of methamphetamine

Case 1:04-cr-00279-JMS    Document 106    Filed 05/16/2006    Page 20 of 26

20

1  for sale.

2          THE DEFENDANT:  Yes.

3          THE COURT:  All right.  And have you been shown a

4  laboratory report for those two ounces of methamphetamine?

5  That shows that it's 56.3 grams of d-methamphetamine

6  hydrochloride of 88 percent purity.

7          THE DEFENDANT:  Yes.

8          THE COURT:  All right.  Do you dispute that the

9  two ounces of ice that you had contained 56.3 grams of d-

10 methamphetamine hydrochloride of 88 percent purity?

11         THE DEFENDANT:  No.

12         THE COURT:  Okay.  So that's -- all right.  For

13 Count 2 of the Indictment, it charges you with knowingly and

14 intentionally possessing with the intent to distribute fifty

15 grams or more of methamphetamine.

16         What is it that you did that makes you guilty of

17 Count 2?

18         THE DEFENDANT:  Well, I -- yes, I tried to

19 distribute fifty or more grams to another person.

20         THE COURT:  All right.  And, do you understand

21 that there's a search warrant for a hotel room in Waikiki

22 where you had been staying?  And the agents recovered

23 plastic bags containing methamphetamine in a black suitcase

24 that was owned by you.

25         THE DEFENDANT:  Yes.

Case 1:04-cr-00279-JMS    Document 106    Filed 05/16/2000    Page 21 of 26

21

1          THE COURT:  And the methamphetamine that was

2    found in this search warrant was submitted to a laboratory

3    for analysis.  Were you shown that the analysis determined

4    that the methamphetamine that was found in the black

5    suitcase contained a total of 217.3 grams of d-

6    methamphetamine hydrochloride of 91 percent purity.

7          Were you shown that -- you -- yes?  You were

8    shown that lab report?

9          THE DEFENDANT:  Yes.

10          THE COURT:  All right.  And so the

11    methamphetamine that was recovered from the black suitcase,

12    did that belong -- that methamphetamine belong to you?

13          THE DEFENDANT:  Yes.

14          THE COURT:  All right.  And do you deny that the

15    methamphetamine that was found in the black suitcase totaled

16    217.3 grams of d-methamphetamine hydrochloride of 91 percent

17    purity.

18          THE DEFENDANT:  No.

19          THE COURT:  All right.  And your having the

20    methamphetamine and offering it to others for sale, did all

21    of this occur in Waikiki, Hawaii?

22          THE DEFENDANT:  Yes.

23          THE COURT:  And the events we talked about

24    occurred between January 13 and January 15, 2000 -- not

25    January.  I said January.  I meant --

Case 1:04-cr-00279-JMS     Document 106     Filed 05/16/2006     Page 22 of 26

22

1          Let me start again.  The events that we talked

2     about -- the sale and possession of the methamphetamine --

3     those occurred between July 13 and 15 of the year 2004.  Is

4     that correct?

5               THE DEFENDANT:  The sale?

6               THE COURT:  Well, the time you had the

7     methamphetamine and you were offering it for sale to the

8     undercover agent.

9               You got arrested on July 15th.  And I believe on

10    July 13th and 14th, you admitted to meeting with people to

11    offer them samples and then a sale.

12              MS. GRAY:  Your Honor, I think what's confusing

13    Mr. Ocampo is he actually was arrested on the 14th, he came

14    to court on the 15th --

15              THE COURT:  Oh.

16              MS. GRAY:  But his arrest occurred on the 14th.

17              THE COURT:  Oh, I'm sorry.

18              MS. GRAY:  I think that's the only thing that's

19    confusing him.

20              THE COURT:  Oh, I see, and the search warrant was

21    executed after his arrest?

22              MS. GRAY:  On the 15th.

23              THE COURT:  On the 15th.  Okay.  Sorry.

24              THE INTERPRETER:  Excuse me, the date that the

25    search warrant was executed?

Case 1:04-cr-00279-JMS    Document 106    Filed 05/16/2006    Page 23 of 26

23

```
 1              THE COURT:  Was July 15th.
 2              All right.  So let me ask you again, then.  July
 3    13th and 14th, were these -- of 2003 -- 4.  July 13th and
 4    14th, 2004.  Were those the dates that you met with various
 5    people and offered them samples and also to sell
 6    methamphetamine.
 7              THE DEFENDANT:  Um hm.
 8              THE COURT:  Is that yes?
 9              THE DEFENDANT:  Yes.
10              THE COURT:  All right.  Anything else you want me
11    to cover with him?
12              MS. SAMESHIMA:  No, Your Honor.  Thank you.
13              THE COURT:  All right.
14              Ms. Gray, are you aware of any reason why I
15    should not accept your client's pleas of guilty to Counts 1
16    and 2 of the Indictment?
17              MS. GRAY:  No, Your Honor.
18              THE COURT:  All right, Mr. Ocampo Barajas, as to
19    Count 1 that charges you with knowingly and intentionally
20    conspiring to distribute and possess with the intent to
21    distribute fifty grams or more of methamphetamine, how do
22    you plead to that charge, sir; guilty or not guilty?
23              THE DEFENDANT:  Well, I wasn't in my -- I didn't
24    have my five senses with me.  I was just -- I was drunk
25    every day.
```

Case 1:04-cr-00279-JMS    Document 106    Filed 05/16/2006    Page 24 of 26

24

1          Okay.  Guilty.

2          THE COURT:  Okay.  So you're pleading guilty to

3   the conspiracy to possess and to distribute over fifty grams

4   of methamphetamine.  Is that correct?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Okay.  And as to Count 2, the charge

7   that you knowingly and intentionally possessed with the

8   intent to distribute fifty grams or more of methamphetamine

9   on or about July 15, 2004.  How do you plead to that charge;

10  guilty or not guilty.

11         THE DEFENDANT:  Guilty.

12         THE COURT:  The Court finds the Defendant is

13  fully competent and capable of entering an informed and

14  valid plea; that his plea of guilty is knowing and voluntary

15  and supported by an independent basis in fact containing

16  each of the essential elements of the offense charged

17  against him.

18         I am therefore signing the Report and

19  Recommendation Concerning the Plea of Guilty and I am

20  recommending that the Defendant be adjudged guilty and have

21  sentence imposed.

22         Objections to my report and recommendations are

23  waived unless served and filed within ten days.

24         All right, now I'm ordering our Probation to

25  prepare that report about you and your case.  If you wish,

Case 1:04-cr-00279-JMS    Document 106    Filed 05/16/2006    Page 25 of 26

25

1   Ms. Gray can be present when the probation officer

2   interviews you.  Once the report is completed, you'll have

3   an opportunity to read it and to make any objections to the

4   contents of that report.

5         You will be brought back to court on the day of

6   your sentencing and you and Ms. Gray will have an

7   opportunity to make a statement before the judge imposes

8   your sentence.

9         Mr. Nakamura, if you will set the sentencing date

10   and time.

11         THE CLERK:  Sentencing to Counts 1 and 2 of the

12   Indictment will be on January 23, 2006 at 3:00 p.m. before

13   Chief Judge David Alan Ezra.

14         THE COURT:  So that's the sentencing date and

15   time.  I'm going to remand you back to the custody of the

16   U.S. Marshal's Services pursuant to the prior detention

17   order and then you'll be brought back for your sentencing.

18         Anything further in this matter?

19         MS. SAMESHIMA:  Nothing further.  Thank you, Your

20   Honor.

21         MS. GRAY:  Nothing further, Your Honor.

22         THE COURT:  All right.  So he's remanded back to

23   the custody of the U.S. Marshal's Service.

24         Good luck to you, sir.  We're adjourned.

25              (PROCEEDING CONCLUDED.)

26

1                        C E R T I F I C A T E

2              I, Larraine Sinclair, do hereby certify that the

3    foregoing is a true and correct transcription, to the best

4    of my ability, of an audiotape of the proceedings in the

5    foregoing matter.

6              I further certify that I am not counsel for any

7    of the parties hereto nor in any way interested in the

8    outcome of the cause named in the caption.

9

10   _____

                 Lafraine Sinclair

11

12   DATED:  May 16, 2006

13

14

15

16

17

18

19

20

21

22

23

24

25