```
 1              IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF HAWAII

 3                                    )
      UNITED STATES OF AMERICA,       )   CR 04-00279 JMS 01
 4                                    )
                 Plaintiff,           )   Honolulu, Hawaii
 5         vs.                        )   April 6, 2006
                                      )   2:15 P.M.
 6    ARNULFO BARAJAS OCAMPO,         )
                                      )   Sentencing to Counts 1
 7               Defendant.           )   and 2 of the Indictment
                                      )
 8    _____)

 9                     TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE J. MICHAEL SEABRIGHT
10                   UNITED STATES DISTRICT JUDGE

11

12    APPEARANCES:

13    For the Government:         BEVERLY WEE SAMESHIMA
                                  Office of the U.S. Attorney
14                                PJKK Federal Bldg.
                                  300 Ala Moana Blvd. Ste. 6100
15                                Honolulu, HI 96850

16    For the Defendant:          DONNA M. GRAY
                                  Office of the Federal Public
17                                   Defender
                                  PJKK Federal Bldg.
18                                300 Ala Moana Blvd. Ste. 7104
                                  Honolulu, HI 96850
19
      Also Present:               ROSANNE T. DONOHOE
20                                U.S. Probation Office
                                  300 Ala Moana Blvd. Ste C-110
21                                Honolulu, HI 96813

22    Official Court Reporter:    Debra Kekuna Chun, RPR, CRR
                                  United States District Court
23                                300 Ala Moana Blvd. Ste. C285
                                  Honolulu, HI 96850
24                                (808) 534-0667

25    Proceedings recorded by machine shorthand, transcript
      produced with computer-aided transcription (CAT).
```

EXHIBIT B

```
1    THURSDAY, APRIL 6, 2006              2:16 O'CLOCK P.M.
2              THE CLERK:  Criminal Number 04-00279 JMS, United
3    States of America versus, defendant 1, Arnulfo Barajas
4    Ocampo.  This case is called for hearing on a Sentencing
5    as to Counts 1 and 2 of the Indictment.
6              MS. SAMESHIMA:  Yes.  Good afternoon, Your
7    Honor.  Beverly Wee Sameshima on behalf of the United
8    States.
9              THE COURT:  Yes.  Good afternoon.
10             MS. GRAY:  Good afternoon, Your Honor.  Donna
11   Gray present with Arnulfo Ocampo, and interpreting in the
12   Spanish language is Patricia Harpstrite.
13             THE COURT:  Yes.  Good afternoon to all three of
14   you.
15             Let me first ask you, Miss Gray and Mr. Ocampo,
16   if you've both had a full opportunity to read, review, and
17   discuss the presentence report and the addendum and make
18   any and all objections to the report that you wish to.
19             MS. GRAY:  Yes, Your Honor.
20             THE COURT:  Is that right, Mr. Ocampo?
21             THE DEFENDANT:  Yes.
22             THE COURT:  All right.  Thank you.  You may be
23   seated.
24             On May 12th of last year, Mr. Ocampo pled guilty
25   to counts 1 and 2 of the indictment without a plea
```

1  agreement.  Count 1 charged him with conspiracy to
2  distribute and possession with intent to distribute 50
3  grams or more of methamphetamine.  And count 2 charges
4  possession with intent to distribute 50 grams or more of
5  methamphetamine.
6           Now, I am placing the presentence report in the
7  record under seal.  If an appeal is taken, counsel will
8  have access to the report, other than the confidential
9  recommendation section.
10          All right.  Miss Sameshima, I want to start with
11 you.  I understand you have no objections to either the
12 factual statements or the guideline calculations.  Is that
13 right?
14          MS. SAMESHIMA:  That's correct, Your Honor.
15          THE COURT:  Miss Gray, turning to you, I
16 understand you have no objections to the guideline
17 calculations.  Is that right?
18          MS. GRAY:  Correct, Your Honor.
19          THE COURT:  Where are we, then, on your factual
20 statements set forth in your objections?  Has everything
21 been taken care of?
22          MS. GRAY:  Your Honor, what Mr. Ocampo wished me
23 to do in our response to the draft report was simply to
24 give his version of the role that he played, which
25 differed from the version that he believed was being given

1  to the court by the co-defendant Waldroupe. He does not
2  deny his participation in this conspiracy and the things
3  that he did as far as meeting with the undercover officer
4  and facilitating the two purchases made to the undercover
5  officer. Later, when a search warrant was executed, a
6  quantity of drugs was found in the hotel room rented to
7  Mr. Waldroupe and Mr. Makio, and he recognizes that all
8  three of them are responsible for those drugs because they
9  all three possessed those drugs with the future intent of
10 trying to sell them.
11         What he disputed was Mr. Waldroupe's version
12 that Mr. Waldroupe was completely innocent of that --
13 those particular drugs; whereas, Mr. Ocampo's position was
14 all three of them possessed those drugs, all three of them
15 intended to distribute it.
16         THE COURT: All right. Well, are you satisfied
17 that through incorporation of your Sentencing Statement by
18 way of attachment that the report is complete now?
19         MS. GRAY: Yes, I do, Your Honor.
20         THE COURT: So I don't need to make any factual
21 findings, then.
22         MS. GRAY: No, Your Honor.
23         THE COURT: All right. So with that, then, I
24 will adopt the Presentence Investigation Report, which, of
25 course, includes Miss Gray's sentencing statement, which

1   is incorporated to the report by attachment, as the
2   factual findings of the court, as well as the conclusions
3   as to the applicable guidelines.
4         Let me go through my understanding of what the
5   advisory guideline range is as well as the mandatory
6   minimum in this case.  First, I understand that there is a
7   10-year mandatory minimum, an advisory guideline range of
8   135 to 168 months.  I should say that's based on a total
9   offense level 31, criminal history category 3.  Supervised
10  release of five years, a fine of $15,500 to $4 million,
11  and $200 special assessment.
12        Both counsel concur with those -- well, the
13  stated mandatory minimum and the advisory guideline
14  ranges?
15        MS. SAMESHIMA:  Yes, Your Honor.
16        MS. GRAY:  Yes, Your Honor.
17        THE COURT:  All right.  Okay.  Now, I have read
18  some letters Miss Gray submitted on behalf of your client
19  and, of course, got your Sentencing Statement.  Is there
20  anything else I should have received?
21        MS. GRAY:  Your Honor, I did file actually on
22  Tuesday afternoon a very brief sentencing memorandum
23  asking the court to sentence what amounts to a little bit
24  below the advisory guideline and impose in this case the
25  minimum term of 120 months.

```
1          THE COURT:  I did receive that as well.  I
2    should have mentioned that.  I knew about that and have
3    that up here.
4          MS. GRAY:  That's all there is, Your Honor.
5          THE COURT:  All right.  Anything else from you,
6    Miss Sameshima, other than your response to the report?
7    That's it?
8          MS. SAMESHIMA:  That I filed?
9          THE COURT:  Yes.
10         MS. SAMESHIMA:  That's correct.
11         THE COURT:  I just want to make sure there are
12   no motions.  People always look at me like I'm a little
13   crazy when I ask that question, but what I try to do in
14   chambers is get everything together and have my judicial
15   assistant look at the docket sheet at the very end to make
16   sure there's nothing else, but things can fall through the
17   cracks and so I like to make sure because, obviously, if
18   I'm missing something, I'm not doing my job up here.  So I
19   sort of like to ask to make sure I'm not missing anything.
20   Sometimes letters don't get to me, that sort of thing; so
21   I like to ask to make sure I have everything.
22         All right.  Well, with that, Miss Gray, what
23   I'll do is hear from you first and then from your client,
24   if he wishes to address the court, and then Miss
25   Sameshima.
```

1         MS. GRAY: Thank you, Your Honor.
2         Your Honor, the overall reason I'm asking the
3   court to consider reducing the advisory guideline to the
4   minimum term is based upon Mr. Ocampo's alienage. I, in
5   fact, did check with the regional office of the Bureau of
6   Prisons yesterday to make sure my facts are straight, and,
7   in fact, right now, at least in the western region, there
8   are some prisons that offer the intensive drug treatment
9   program in the Spanish language. However, if an inmate
10  has a detainer placed upon him, as does Mr. Ocampo, he
11  will not be eligible for the incentives connected to that
12  program, which are a possible sentence reduction of up to
13  one year and additional halfway house prerelease time.
14  There's also statutory prerelease time that people with
15  detainers are not eligible for either.
16        So it situates an alien, who will always have an
17  immigration detainer, in a situation where he can never
18  receive the sentencing -- the type of sentencing
19  reductions that are available to inmates without
20  detainers. And the largest amount of detainers in the
21  western region -- and I'm not sure what's true in other
22  regions of the country -- are immigration detainers. And
23  those are detainers that are not based upon criminal
24  charges but are based upon the fact that the person is
25  illegally within the United States, and then they are

1   subject to the civil disposition of deportation through
2   the Immigration Service.
3           Additionally, Mr. Ocampo does have family in
4   Mexico.  He has never had any lengthy incarcerations
5   before.  And he believes that what he has come to realize
6   at the F.D.C. is that the criminal offense that he was
7   convicted for in California, as well as the driving
8   offenses that he was convicted of, would not have occurred
9   if it hadn't been for his own drug use and alcohol abuse.
10          He has had 21 months now at the F.D.C., I
11  believe -- no, not quite, but almost -- to reflect upon
12  how he got himself into the American criminal justice
13  system, when his original intent was to come here to find
14  work and try to earn money to send back to his family.
15          He -- frankly, this is the first case that he
16  has, and it's very often true federal court is the first
17  case in which someone is going to be faced with enormous
18  consequences for the offense of drug distribution.  Ten
19  years is an enormous consequence.  He will face
20  disadvantages within the federal prison system because of
21  his alienage and the detainer that has been placed upon
22  him, and he will be immediately turned over to the
23  Immigration Service upon completion of his term for
24  deportation and exclusion from this country.
25          So in looking at all of the factors under 3553

1    and the purposes of sentencing, I'd ask the court to
2    reduce the minimum -- or the low end of the guideline,
3    which is 135 months, by 15 months to the mandatory minimum
4    term of 120 months.
5             THE COURT:  Let me just for my own education,
6    Miss Gray, make sure I understand.  If I understand
7    correctly, you're saying -- and we'll get to this at the
8    end -- but, for instance, if your client did want the
9    500-hour program --
10            MS. GRAY:  He could participate.
11            THE COURT:  -- and I thought that was
12   appropriate to recommend, it's something he's eligible
13   for, it's just that he's not eligible for the sentence
14   reduction.
15            MS. GRAY:  He's not eligible for that.  But he
16   would have to be in a prison that offered it in Spanish.
17            THE COURT:  Right.  Okay.  Thank you.
18            Mr. Ocampo, do you wish to address me at this
19   point?
20            I'm going to have you speak into the microphone
21   now.  Thank you.
22            THE DEFENDANT:  Your Honor, I have no excuses
23   for what I've done.  I can only ask for forgiveness.  And
24   I realize that it was largely due to my inability due to
25   my problems with drugs and alcohol, and I can only ask

1  that you give me a second chance.  That I need to ask --
2  I've only hurt myself and my family with my actions, and
3  thank God, I am now on the way to rehabilitation.  And I
4  would like the second opportunity in order to seek the
5  forgiveness of my family and my children.
6           THE COURT:  All right.  Is that all, sir?
7           THE DEFENDANT:  Yes.
8           THE COURT:  All right.  Thank you very much.
9           Miss Sameshima.
10          MS. SAMESHIMA:  Your Honor, I do not believe
11 that this is the kind of case where the court should
12 deviate from the advisory guidelines.  Although, they are
13 just that and the court certainly has discretion, they're
14 there for a reason.  Again, you know, we have these
15 guidelines in order to try to promote a parity among
16 defendants and try to get some kind of fairness and
17 uniformity, and this particular defendant's history, the
18 nature of the offense and all of those factors really
19 don't cry out for this court to deviate from what the
20 advisory guidelines are.
21          I'd note that, although his criminal history is
22 not extensive, he certainly does have one.  So he's had an
23 opportunity before to -- to have a second chance, so to
24 speak.  He never got jail time.  He was put on probation.
25 And yet he continued to offend.

1          And while it's sad that he does have a drug
2    problem and that is probably what fueled his offense,
3    that's probably the majority of the defendants the courts
4    see with respect to drug offenses. So that -- I mean that
5    really isn't a factor which should warrant this court to
6    deviate. So we ask the court just to sentence him within
7    the advisory guidelines.
8          THE COURT: All right. Miss Gray, any final
9    words?
10         MS. GRAY: Nothing further.
11         THE COURT: Okay. Well, the court has, of
12   course, reviewed carefully the presentence report and the
13   letters submitted as well as the pleading filed by Miss
14   Gray and has considered the facts involving Mr. Ocampo's
15   case as well as the required considerations under 18,
16   United States Code, Section 3553(a). Of course, part of
17   that is considering the guidelines and sentencing
18   disparity.
19         And in looking at the guideline sentence and
20   Miss Gray's argument, I probably would have gone higher
21   than the 135 months, but I think some of the arguments
22   Miss Gray makes have some merit to them. They don't, I
23   think, convince me sufficiently to go outside the
24   guideline range in this case but do convince me to go to
25   the bottom of the guideline range in this case.

1           And let me give you some of the reasons why I
2    think outside the range isn't appropriate in this case and
3    why the guideline range, to put it another way, is
4    appropriate in this case, and that are some of the
5    aggravating factors that do concern me.
6           When I look at the 3553(a) factors, a lot of
7    those factors, of course, are somewhat taken into account
8    in the guidelines themselves: The need for a sentence to
9    reflect the seriousness of the conduct, to promote respect
10   for the law, provide just punishment, those sort of things
11   the guidelines do look at.
12          The one factor that I've looked at carefully,
13   and both of you have probably heard me talk about before,
14   is the need to protect the public from further crimes
15   because I think that is somewhere where the personal
16   characteristics of a defendant speak -- speak out, and
17   there's a need to look at that and weigh that very
18   carefully.
19          And oftentimes the nature and circumstances of
20   the offense and an offender's personal characteristics
21   speak to that; so I try to gauge whether I think the
22   public does need to be protected from further crimes of a
23   particular defendant.  And I certainly have gone below the
24   guidelines where I feel that's not necessary and have
25   stayed within -- I don't think I've ever gone above the

```
 1   guidelines where I think there is some need to protect the
 2   public.  Stated another way, there's a concern that a
 3   defendant might reoffend.
 4           So I look at Mr. Ocampo, who was previously
 5   removed from this country, obviously reentered because
 6   he's back, and was an illegal alien in the country at the
 7   time he committed the offense.  He did first encounter the
 8   justice system almost 10 years ago or 10 years ago in 1996
 9   when he was arrested in California on a drug charge.  A
10   bench warrant was issued back in 1996 and, in fact,
11   remains outstanding to this day.
12           The face sheet also reflects the use of nine
13   alias names.  I'm not drawing a huge amount from that
14   because I'm not sure what all that means, where all those
15   names came from necessarily, but it does reflect, at least
16   in my view, some attempt to use more than one name, and a
17   lack of sufficient evidence of steady employment to make
18   me feel comfortable that Mr. Ocampo would have something
19   else to do other than reoffend.
20           So I do have some concerns, not overwhelming,
21   but some concerns that Mr. Ocampo has not benefitted from
22   his prior encounters with the criminal justice system and
23   that he may reoffend again.  And given those factors, I
24   believe a sentence within the guideline range here is
25   appropriate.  But I do believe, for the reasons stated by
```

```
 1   Miss Gray, that what I will intend to impose is a sentence
 2   at the bottom of that range.
 3          So if Mr. Ocampo could rise, I'll state my
 4   intended sentence.  Which is 135 months of imprisonment.
 5          Now we have two counts here; is that right?
 6          MS. GRAY:  Yes, Your Honor.
 7          THE COURT:  To run concurrently.  Five years
 8   supervised release, again to run concurrently as to both
 9   counts.  No fine because it does appear to me that Mr.
10   Ocampo does not have the financial ability to pay a fine
11   or for all or part of the costs of incarceration or
12   supervised release, and to impose a fine would simply be
13   an undue hardship on him and his family.  A $200 special
14   assessment and the following conditions of supervision:
15          1.  That he abide by the standard conditions of
16   supervision;
17          2.  That he not commit any crimes, federal,
18   state, or local;
19          3.  That he not possess illegal controlled
20   substances;
21          4.  That he cooperate in the collection of DNA
22   as directed by the probation office;
23          5.  That he submit to one drug test within 15
24   days of commencement of supervision and at least two drug
25   tests thereafter but no more than 15 valid drug tests per
```

1  month.

2           You shall not possess a firearm, ammunition,
3  destructive device, or any other dangerous weapon.

4           And, last, that you submit to removal
5  proceedings, including deportation or exclusion, as
6  required by the Department of Homeland Security.  And you
7  shall not enter the United States without proper
8  authorization.

9           All right.  Does either counsel have any reasons
10 to put on the record as to why I should not impose
11 sentence as stated?

12          MS. SAMESHIMA:  No, Your Honor.

13          MS. GRAY:  No, Your Honor.

14          THE COURT:  Court will impose sentence, then, as
15 stated.

16          Now, Mr. Ocampo, I am advising you that you do
17 have a right to appeal my sentence and you must do so
18 within 10 days of today.  Failure to appeal within 10 days
19 acts as a waiver, meaning you give up your right to
20 appeal.  The government also may file an appeal from my
21 sentence.

22          You are entitled to assistance of counsel to
23 assist you in any appeal, and if you cannot afford one,
24 one would be appointed for you free of charge.  And you
25 certainly can talk to Miss Gray about what options you

```
 1   have in that regard.
 2            All right.  Miss Gray, do you have some
 3   recommendations to make or --
 4            MS. GRAY:  Yes, Your Honor.  We'd ask the court
 5   to recommend the Terminal Island facility in -- it's in
 6   the Los Angeles, California area, Your Honor.  I
 7   understand that that facility doesn't presently have a
 8   Spanish language program, but they are in the process of
 9   instituting one.
10            THE COURT:  Okay.
11            MS. GRAY:  So if the court could also recommend
12   the 500-hour drug program, English language instruction --
13            THE COURT:  Okay.  Hold on.
14            MS. GRAY:  -- and vocational training.
15            THE COURT:  Educational training, English
16   language, and the 500-hour comprehensive drug treatment
17   program.
18            Okay.  Anything further?
19            MS. GRAY:  No.
20            MS. SAMESHIMA:  Your Honor, did you impose the
21   special assessment?  I might have missed that.
22            THE CLERK:  He did.
23            THE COURT:  $200; right.
24            Okay.  Anything else?
25            MS. GRAY:  No, Your Honor.
```

```
 1              MS. SAMESHIMA:  No, Your Honor.
 2         (Court and courtroom manager conferring.)
 3              THE COURT:  I'm being told I may have missed a
 4   condition of supervision; so let's check and see.
 5              Right.  Well, is it because he'll be going
 6   presumably out of the country that we don't have substance
 7   abuse treatment as a condition?  Or should that be
 8   included as a condition of supervision?
 9              PROBATION OFFICER:  Yes.  No treatment or
10   testing.  You're asking about the mandatory condition
11   or --
12              THE COURT:  No, no, no.  Whether I should as a
13   condition of supervised release have him undergo drug --
14   further drug treatment.
15              PROBATION OFFICER:  No.
16              MS. GRAY:  That's discretionary, Your Honor,
17   with a person that's going to be deported.
18              THE COURT:  I think that's why it wasn't
19   included in the conditions as a recommendation to me.
20              MS. GRAY:  There's also -- well, there's no
21   restitution or a fine in this case; so there's no
22   Financial Litigation Unit language.
23              THE COURT: Right.  Exactly.  Okay.
24              Well, Mr. Ocampo, good luck.  I hope you can get
25   over your drug program and get back to your children.
```

1          Thank you.
2          (Court recessed at 2:38 P.M.)
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Case 1:04-cr-00279-JMS   Document 120-3   Filed 11/30/2007   Page 19 of 19

19

```
 1                COURT REPORTER'S CERTIFICATE
 2        I, Debra Kekuna Chun, Official Court Reporter,
 3   United States District Court, District of Hawaii, do
 4   hereby certify that the foregoing is a correct transcript
 5   from the record of proceedings in the above-entitled
 6   matter.
 7        DATED at Honolulu, Hawaii, May 9, 2006.
 8
 9                              /s/ Debra Chun
10                              DEBRA KEKUNA CHUN
11                              RPR, CRR
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```